UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KINDRA GREENE, individually and for others similarly situated, | Case No. 1:23-cv-00253-BLW |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| CASCADIA HEALTHCARE, LLC, | |
| Defendant. | |

## INTRODUCTION

Before the Court is Plaintiff Kindra Greene's motion for court-authorized notice pursuant to 29 U.S.C. § 216(b) (Dkt. 34). The Court heard oral argument on August 20, 2024, and now issues its decision. For the reasons discussed below, the Court will grant Greene's motion with certain limitations.

## BACKGROUND

This matter arises out of Greene's alleged employment with Defendant Cascadia Healthcare LLC, in which she claims Cascadia failed to pay overtime

wages in violation of the Fair Labor Standards Act (FLSA).[1] *See generally Compl.*, Dkt. 1. In November 2021, Greene began working as a Registered Nurse at Arbor Valley, a Cascadia facility in Boise, Idaho. *See Compl.* ¶ 16, Dkt. 1; *Greene Decl.* ¶ 2, Dkt. 34-2. During Greene's time at Arbor Valley, Greene worked as both a Floor RN and a unit manager RN. Her job responsibilities included various aspects connected to the direct care of patients. *Greene Decl.* ¶¶ 2-3, Dkt. 34-2. Throughout her employment, Greene was classified as a non-exempt employee and was paid on an hourly basis. *See Compl.* ¶ 17. Greene continued to work at Arbor Valley until April 2023 when her employment ended. *Greene Decl.* ¶ 2, Dkt. 34-2.

In May 2023, Greene—on behalf of herself and others similarly situated— instigated this lawsuit by filing an FLSA collective action, alleging a single cause of action for failure to pay overtime wages. *See generally Compl.*, Dkt. 1. Specifically, Greene alleges Cascadia had various policies in place that resulted in employees working off-the-clock and, therefore, not being paid the proper amount

---

[1] As discussed in more depth below, Cascadia challenges its employer status claiming that it is merely a holding company of other holding companies, which, in turn, own 46 independently owned and operated facilities. *See Def.'s Resp.* at 4-5, Dkt. 43. Following the Ninth Circuit's general direction that the Court, at this stage of litigation, should "typically focused on a review of the pleadings[,]" the Court will predominately rely on Greene's recitation of this lawsuit and will, therefore, refer to Cascadia as if it is the owner of the 46 facilities and Greene's employer. *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1109 (9th Cir. 2018) (citations omitted). That said, the Court clarifies that it has not made any factual determination regarding Cascadia's employer status, and believes doing so at this stage would be improper.

of overtime wages. *See id.*

On March 11, 2024, prior to completing any discovery, Greene filed this motion for court-authorized notice pursuant to 29 U.S.C. § 216(b), or, in other words, requested that the Court conditionally certify a putative collective group. *See Pl.'s Motion*, Dkt. 34. In support of her motion, Greene filed a supporting declaration as well as three more declarations from other Cascadia employees. Sheena Freemen was a non-exempt caregiver at the Coeur d'Alene Health and Rehabilitation of Cascadia location, whose job duties included direct patient care, from April 2021 to September 2021. *See Freeman Decl.* ¶ 2, Dkt. 34-2. Austin Peer, also a non-exempt hourly employee, worked directly with patients at Twin Falls Transitional Care of Cascadia as a certified nursing assistant. *See Peer Decl.* ¶ 2, Dkt. 34-3. Gabrielle Messick, the last employee to submit a declaration, worked at three different Cascadia locations in the greater Boise area as a non-exempt social worker. *See Messick Decl.* ¶ 2, Dkt. 34-4. Like the other employees, Messick worked directly with patients while she was working for Cascadia, and claims that she did not receive all the overtime wages that she was entitled to. *See id.* ¶¶ 2-3.

Greene, with the support of three other employees, seeks to certify a collective group based on three policies: Cascadia's alleged automatic lunch

deduction policy, time rounding policy, and common payroll formulas that fail to account for shift differentials, on-call pay, or non-discretionary bonuses when calculating employees' regular rates. *See Pl.'s Br.* at 1, Dkt. 34-1. Greene claims that due to all three policies—either from performing off-the-clock work or from having a reduced regular rate—Cascadia failed to appropriately compensate her and other similar employees for overtime wages.

Cascadia opposed Greene's request to certify a collective action. *See generally Def.'s Br.*, Dkt. 43. While Cascadia raises individualized challenges to each policy Greene relies on to support a collective action, it makes a threshold argument that Cascadia cannot be considered an employer or joint employer of Greene or any other potential collective member. *See id.* at 9-14. Based on its supporting declaration, Cascadia claims it is simply a holding company that "was formed to hold companies and interest in other companies and investments, including other companies that hold interest in still other companies." *See id.* at 4. Specifically, Cascadia claims that it owns at least seven holding companies in six different states and that those companies own 100% of Cascadia-related healthcare facilities, all of which themselves are independently owned and operated. *See id.*

## LEGAL STANDARD

Under the Fair Labor Standards Act (FLSA) an employee may bring a

collective action on behalf of other "similarly situated" employees. 29 U.S.C.

§216(b).  A "collective action" under the FLSA differs from a class action in that

each plaintiff must affirmatively opt-in to participate in the litigation. *See*

*McElmurry v. U.S. Bank Nat. Ass'n*, 495 F.3d 1136, 1139 (9th Cir. 2007).

Determining whether a collective action is appropriate falls within the district

court's discretion. *Hanigan v. OpSec Sec., Inc.*, No. 1:22-CV-00064-DCN, 2022

WL 4465518, at *1 (D. Idaho Sept. 26, 2022).

To certifying a collective action, the plaintiff bears the burden of showing

that the plaintiff and the putative collective action participants are "similarly

situated." *Id.* While the FLSA does not define "similarly situated," the Ninth

Circuit has recently explained that "party plaintiffs are similarly situated, and may

proceed in a collective to the extent they share a similar issue of law or fact

material to the disposition of their FLSA claims." *Campbell v. City of Los Angeles*,

903 F.3d 1090, 1117 (9th Cir. 2018). "Significantly, as long as the proposed

collective's 'factual or legal similarities are material to the resolution of their case,

dissimilarities in other respects should not defeat collective treatment." *Senne v.*

*Kansas City Royals Baseball Corp.*, 934 F.3d 918, 948 (9th Cir. 2019) (quoting

*Campbell*, 903 F.3d at 1117).

To determine whether employees are similarly situated, the Ninth Circuit

uses a two-step approach. *Campbell*, 903 F.3d at 1100 (discussing the "near-universal practice" of the two-step approach to conditional certification). The first step—also known as preliminary or conditional certification—typically occurs "at or around the pleading stage." *Id.* at 1109. [2] During this initial step, courts determine whether potential plaintiffs are similarly situated based on the pleadings, which "may sometimes be supplemented by declarations or limited other evidence." *Id.* (citations omitted); *see also Hanigan v. OpSec Sec., Inc.*, No. 1:22-CV-00064-DCN, 2022 WL 4465518, at *2 (D. Idaho Sept. 26, 2022). "The sole consequence of conditional certification is the sending of court-approved written notice to employees[.]" *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013) (citing *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171-172 (1989)).

The second step—which occurs after discovery—is usually presented through a defendant's motion to decertify, and "resembles a motion for summary judgment." *Campbell*, 903 F.3d at 1117. During the second step, "[t]he district court will then take a more exacting look at the plaintiffs' allegations and the record." *Id.* at 1110. Regardless of the stage, however, a court should be guided by the background principle that "because the FLSA is a remedial statute, it must be

---

[2] The first step in certifying a collective in FLSA case is also frequently called the notice stage. The Court will, therefore, use these terms interchangeably in this decision.

interpreted broadly." *Senne*, 934 F.3d at 950 (citations omitted).

This case is in its infancy and, therefore, is at the first step. Accordingly, Greene's burden to show that potential plaintiffs are similarly situated is "lenient," and "typically results in conditional class certification." *Harp v. Starline Tours of Hollywood, Inc.*, No. 214CV07704CASEX, 2015 WL 4589736, at *4 (C.D. Cal. July 27, 2015); *see also* § 1807 Collective Actions Under the Fair Labor Standards Act, 7B Fed. Prac. & Proc. Civ. § 1807 (3d ed.) ("Thus, although conditional certification has been denied based on a failure to meet these preliminary proof requirements, more commonly it is granted and notice issues at this first certification stage."). Generally, a plaintiff can meet this standard by providing "substantial allegations, supported by declarations or discovery, that the putative class members were together the victims of a single, decision, policy or plan." *Hanigan*, 2022 WL 4465518 at *2 (quoting *Kress v. PricewaterhouseCoopers, LLP*, 263 F.R.D. 623, 627 (E.D. Cal. 2009)). "Unsupported assertions of widespread violations[,]" however, are not enough to satisfy even this lenient burden. *See id.* (quoting *Fenn v. Hewlett-Packard Co.*, 2011 WL 6150642, at *1 (D. Idaho Dec. 12, 2011)); *see also Silverman v. SmithKline Beecham Corp.*, No. CV 06-7272 DSF CTX, 2007 WL 6344674, at *2 (C.D. Cal. Oct. 15, 2007) ("The evidence does not have to be overwhelming, but it should demonstrate some

likelihood that the proposed class members are similarly situated and that more than a minimal number of prospective class members are interested in joining the suit.").

## ANALYSIS

### A.    Merits Based Arguments

As an initial matter, Cascadia argues that it is not a proper defendant under the FLSA because it "is not, and never was, the employer of Greene or any of the proposed Putative Collective Members." *Def.'s Resp.* at 9, Dkt. 43. To support their assertion, Cascadia relies exclusively on the declaration of Nathan Hosac, the Vice President of Cascadia Services. *See Hosac Delc.* ¶ 2, Dkt. 43-1. Hosac explains that Cascadia Healthcare, LLC is a holding company that was formed to hold companies and interest in other companies. In other words, Hosac claims that Cascadia is "a holding company of holding companies." *See id.* ¶ 4. In response, Greene argues that Cascadia is asking "the Court to indulge in a premature evaluation of the merits." *See Pl.'s Reply* at 6, Dkt. 44.

While Cascadia's argument may be viable at some later stage in this litigation, it is premature. At this stage, courts should refrain from making merit-based determinations or resolving factual disputes. *See, e.g.*, *Harrington v. Cracker Barrel Old Country Store Inc.*, No. CV-21-00940-PHX-DJH, 2024 WL 342440, at

*8 (D. Ariz. Jan. 30, 2024) (It is not the court's role to resolve factual disputes, decide substantive issues relating to the merits of the claims, or make credibility determinations at this first stage of certification[.]"); *Hanigan v. OpSec Sec., Inc.*, No. 1:22-CV-00064-DCN, 2022 WL 4465518, at *2 (D. Idaho Sept. 26, 2022) ("at this stage in the case, however, the Court cannot resolve factual disputes."). In fact, district courts in this circuit consistently reject evidence produced by a defendant during the initial certification that go to the merits of a claim. *See, e.g.*, *Holifield v. NexusCW, Inc.*, No. 3:24-CV-00353-RBM-MMP, 2024 WL 3885571, at *8 (S.D. Cal. Aug. 20, 2024) ("the Court declines to consider this evidence and the merits at the preliminary certification stage."); *Hanigan*, 2022 WL 4465518 at *2 ("At this early stage, courts have rejected arguments by defendants to introduce evidence going to the merits of plaintiffs' allegations."); *Luque v. AT & T Corp.*, No. C 09-05885 CRB, 2010 WL 4807088, at *3 (N.D. Cal. Nov. 19, 2010) ("Courts *need not even consider* evidence provided by defendants at this stage."); *Kress v. PricewaterhouseCoopers, LLP*, 263 F.R.D. 623, 628 (E.D. Cal. 2009) ("In determining whether plaintiffs have met this standard, courts need not consider evidence provided by defendants."). This position is further supported by the *Campbell* Court's guidance that the conditional certification stage is "loosely akin to a plausibility standard[,]" 903 F.3d at 1109, which requires a court to accept all

factual allegations "as true." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Cascadia's argument relies on its own evidence—which Greene has not been able to explore through discovery—and goes to the merits of Greene's claim, it would be improper to determine Cascadia's employer status now.

Moreover, although clearly disputed, Greene alleges that Cascadia maintains control, oversight, and direction of Greene and the putative class members; dictates the hiring and all other employment policies and practices in place at its various healthcare facilities; and has the authority to hire fire, and disciple the employees working at its various healthcare facilities. *See Compl.* ¶¶ 86-89, Dkt. 1. Greene further alleges that Cascadia's facilities have centralized ownership, management, and a centralized human resources department. *Id.* ¶ 94. Thus, even if the Court were to consider Cascadia's evidence, Cascadia is essentially asking this Court to either disregard the pleadings or make a dispositive factual determination—that Cascadia does not qualify as an employer—in the earliest stages of litigation.

The Court is not persuaded that there is a "threshold requirement" for Greene to prove Cascadia was her employer at this stage. *See Def.'s Resp.* at 10, Dkt. 43. While there is no doubt that Greene must establish Cascadia was her employer to ultimately prevail on her FSLA claim, Cascadia has not provided— and the Court has been unable to locate—any binding or persuasive authority

holding that a plaintiff must establish employer status as a threshold requirement for conditional certification. *See Def.'s Resp.* at 9-13, Dkt. 43 (all the supporting authority regarding Cascadia's employer status argument review dispositive motions brought under Rule 12(b) or 56). Notably, determining employer status at this stage appears to be at odds with Ninth Circuit precedent. *See Campbell,* 903 F.3d at 1119 (explaining that even at the decertification stage, "a district court cannot weigh the evidence" as to a merits-dependent issue, let alone at the initial stage); *see also Tijerino v. Stetson Desert Project*, LLC, 934 F.3d 968, 976 (9th Cir. 2019) (suggesting that the district court "should evaluate the employment status of the plaintiffs on *summary judgment*") (emphasis original).

Accordingly, the Court will not rely  on Cascadia's proffered evidence to decide whether Cascadia is an employer or joint employer of Greene or any other potential plaintiff at this time. Thus, turning to the relevant question, the Court will address whether Greene has met her burden to show that the potential collective action participants are similarly situated.

### B.    Similarly Situated Employees

Greene seeks to certify a collective class composed of all hourly, non-exempt employees who work for or on behalf of Cascadia at any Cascadia facility who (1) received an automatic meal period deduction, (2) were subject to

automatic time-rounding, or (3) received shift differentials, on-call pay, or non-discretionary bonuses at any time from May 18, 2020, through the present. *See Pl.'s Br.* at 1, Dkt. 34-1. Greene, in essence, seeks to certify three separate collective groups. Cascadia challenges the certification of all three potential groups. *See Def.'s Br.* at 14-23, Dkt. 43. The Court will address each in turn.

### 1. Automatic Meal Deduction Policy

The first policy Greene seeks to certify a collective class under relates to Cascadia's automatic lunch deduction policy. *See Pl.'s Br.* at 1, Dkt. 34-1. Greene explains that Cascadia implements a policy that automatically deducts 30 minutes from non-exempt, hourly employees. *See id.* at 4-5.

In response, Cascadia does not attack the similarities between Greene and the potential collective members but rather focuses on the validity of its meal deduction policy. Specifically, Cascadia argues that the automatic deduction meal policy does not form a basis for which the proposed collective can be considered similarly situated because the policy is not incompatible with the FLSA for healthcare industry workers. *See Def.'s Br.* at 17-18, Dkt. 43 (citing Wage and Hour Division, U.S. Dep't of Labor, Factsheet No. 53, The Health Care Industry and Hours Worked (2009)).

Initially, Cascadia's argument once again concerns the merits of Greene's

claims, not whether she has sufficiently pled that the putative collective group is similarly situated. *See Hunter v. Legacy Health*, No. 3:18-CV-02219-AC, 2021 WL 24553, at *7 (D. Or. Jan. 4, 2021) (noting that the defendant's arguments incorrectly went to the merits of its meal deduction policy, not whether the plaintiff had "sufficiently pleaded and supported at this stage a claim of common policy or plan that violates FLSA."). Moreover, even if Cascadia is correct that simply relying on the existence of an automatic deduction policy is insufficient to meet the "similarly situated" requirement, Greene clarifies that the issue is not with "Cascadia's written meal-break policy, but with its policy in practice." *Pl.'s Reply* at 2, Dkt. 44. The pleadings allege, and Greene and the three other declarants testify that, due to either understaffing, ethical obligations, supervisor expectations, or lack of information or training, Cascadia's automatic deduction policy—which "most, if not all," Cascadia facilities implement—resulted in them not being compensated when they failed to receive a *bona fide* break. *See Compl.* ¶¶ 58-70, Dkt. 1; *Greene Decl.* ¶¶ 7-8, Dkt. 43-1; *Freeman Decl.* ¶¶ 7-8, Dkt. 43-2; *Peer Decl.* ¶¶ 7-8, Dkt. 43-3; *Messick Decl.* ¶¶ 8-11; Dkt. 43-4.

    In other words, Greene has sufficiently pled that Cascadia's implementation of its automatic meal deduction policy resulted in off-the-clock work in violation of the FLSA. *See, e.g., Hunter v. Legacy Health*, No. 3:18-CV-02219-AC, 2021

WL 24553, at *6-7 (D. Or. Jan. 4, 2021) (finding that the plaintiff met his burden to conditionally certify a collective action based on by either "automatically deducting 30 minutes or by requiring nursing staff to clock out for their meal break, while requiring Collective members to be on duty and subject to interruption."); *Kurtz v. RCCH Trios Health, LLC*, No. 4:19-CV-5049-RMP, 2021 WL 6246626, at *3 (E.D. Wash. Sept. 17, 2021) (finding that plaintiff plausibly alleged an FLSA violation based on off-the-clock work resulting in unpaid overtime and a sufficient factual nexus between Defendants and those certain collective members based on claims that "they were not compensated for work performed during meal breaks[.]"); *Fengler v. Crouse Health Found., Inc.*, 595 F. Supp. 2d 189, 197 (N.D.N.Y. 2009) (certifying a limited collection of patient-care workers who alleged where the court inferred defendants maintained an "automatic meal deduction policy . . . in combination with the alleged short staffing and patient care demands at Crouse Hospital resulted in plaintiffs routinely working through or during scheduled meal breaks, without compensation, and with knowledge of administration at the hospital."). Moreover, that question—whether the implementation of Cascadia's automatic meal deduction policy resulted in off-the-clock-work violating the FLSA—will be integral to the resolution of Greene's case and the three other potential plaintiffs that submitted declarations in support

of certification.

Therefore, Greene alleged a plausible legal theory based on a common scheme or practice sufficient to satisfy the lenient standard to conditionally certify a collective action. While it may seem like an oversimplification of this matter, that is all that is required under the "lenient" burden at this stage of certification.

### 2. Time-Rounding Policy

The second group of employees that Greene claims are similarly situated are those that were subject to an automatic time-rounding policy. Specifically, Greene claims that Cascadia employees were told not to clock in until within 7 minutes of their scheduled start time and not to clock out longer than 7 minutes of the end of their shift to avoid triggering Cascadia's 15-minute rounding policy. *See Pl.'s Br.* at 11, Dkt. 34-1. Greene further argues that Cascadia's time-rounding policy favors Cascadia more than it would round in the worker's favor. *See id*.

While Cascadia raises various substantive challenges to Greene's time-rounding claims, it makes a general argument that the time-rounding claims fall outside the scope of the putative class as pled by Greene in her complaint. *See Def.'s Resp.* at 20; Dkt. 43. The Court agrees.

In her motion, Greene defines the putative class as:

All hourly, non-exempt employees who work for, or on behalf of Cascadia at any Cascadia facility who (i) received an automatic meal

period deduction, (ii) were subject to automatic time-rounding, and/or
(iii) received shift differentials, on-call pay, and/or non-discretionary
bonuses at any time from May 18, 2020 through the present (the
"Putative Collective Members").

*See Pl.'s Br.* at 1, Dkt. 34-1. The operative complaint, however, states that "Greene

bringing this action on behalf of herself and other similarly situated hourly, non-

exempt Cascadia employees who (1) were subject to Cascadia's automatic meal

policy and/or (2) were paid under Cascadia's shift differential and bonus pay

scheme." *Compl.* ¶ 23, Dkt. 1. The Complaint continues to define the "Putative

Collectives" as:

All hourly, non-exempt employees who work for, or on behalf of
Cascadia at any Cascadia facility who received an automatic meal
period deduction at any time during the past 3 years ("Meal Break
Collective Members" or "Meal Break Collective"); and

All hourly, non-exempt employees who work for, or on behalf of
Cascadia at any Cascadia facility who received shift differentials and/or
bonuses at any time during the past 3 years ("Shift Diff Collective
Members" or "Shift Diff Collective").

*Id.* ¶ 28. Greene argues that she has alleged "sufficient-time rounding and off-the-

clock claims." *See Pl.'s Reply* at 3, Dkt. 44. To support her argument, however,

Greene does not cite to allegations in her complaint. Rather, Greene only directs

the Court to the supplemental declarations. *See id.* (citing the supplemental

declarations).

While the complaint contains sporadic allegations regarding a 7-minute

MEMORANDUM DECISION AND ORDER - 16

policy, those limited allegations are insufficient to allege a potential putative

collective sufficiently. *See Compl.* ¶¶ 71-72. As noted, Greene unquestionably

omitted this policy from her classification of the putative class in her complaint.

Greene also does not mention anything about the time-rounding policy in the

"common questions of law and fact" or under Greene's cause of action for failure

to pay overtime wages. *See id.* ¶¶ 121; 155-64. Based on the declarations, Greene

may be able to conditionally certify as a collective based on this policy.

However—as Greene herself notes—the primary focus of the conditional

certification inquiry is on the pleadings, and the time-rounding collective that

Greene now seeks to conditionally certify is simply not contained within the

allegations of her complaint. *See Campbell*, 903 F.3d at 1109 ("Preliminary

certification, as noted, refers to the dissemination of notice to putative collective

members, conditioned on a preliminary determination that the collective *as defined*

*in the complaint* satisfies the 'similarly situated' requirement") (emphasis added).

Thus, for the time being, the Court will not certify a collective class based

on Cascadia's alleged time-rounding policy.[3] *See id.* ("Denial of preliminary

---

[3] That said, the Court would likely entertain a motion for leave to file an amended complaint given that this matter remains in the early stages of litigation and Greene has not yet attempted to amend. If Greene wishes to delay sending notice to any putative class until after such a motion, the Court will attempt to resolve any issues raised as quickly as possible.

**MEMORANDUM DECISION AND ORDER - 17**

certification may be without prejudice and may be revisited by the district court after further discovery.").

### 3. Shift-Differential Policy

Finally, Greene seeks certification based on Cascadia's alleged policy of failing to incorporate shift differentials, on-call pay, or non-discretionary bonuses when calculating employees' regular rates.[4] *See Pl.'s Br.* at 12, Dkt. 34-1. Greene claims that Cascadia failed to calculate overtime rates properly, resulting in employees not receiving overtime pay based on their "true regular rates of pay". *Id.*

In response, Cascadia argues that not all Cascadia facilities offer shift differentials, and where they do, the facilities' methods of calculating regular rates do include all appropriate remuneration and comply with the FLSA. *See Def.'s Resp.* at 22, Dkt. 43.

Once again, Cascadia is raising a merits-based argument that is dependent on the evidence it provided to the Court. *See id.* As the Court has already discussed, this type of argument is not properly raised at this stage. *See Marino v. CACafe, Inc.*, No. 16-CV-6291 YGR, 2017 WL 5713390, at *3 (N.D. Cal. Nov. 9, 2017) ("At the conditional certification stage, the court does not inquire into the

---

[4] To simplify this claim, the Court will refer to alleged error in the regular rate formula as the "shift-differential policy."

merit of the claims, weigh competing evidence, or make factual findings."). Here, the pleadings allege that Cascadia failed to include shift differentials and bonuses in calculating employees' regular rates of pay for overtime purposes. *Compl.* ¶ 74, Dkt. 1. Further, both Greene and Peer testify that, based on their pay records, it does not appear that shift differential pay, non-discretionary bonuses, and other compensation were included in their overtime rate calculation. *See Greene Decl.* ¶ 14, Dkt. 34-1; *Peer Decl.* ¶ 14, Dkt. 34-4. Thus, Greene has plausibly alleged a violation of the FLSA, and at least one other potential plaintiff is similarly situated. *See Hanigan*, 2022 WL 4465518, at *3 (defendant's "evidence to support this argument is irrelevant to whether [the plaintiff] has met her burden for conditional certification. [The Defendant] will be able to raise this argument at a later time if still pertinent.")

Cascadia makes a final argument that even if the regular rate formula did not include all remuneration, such claims would require "individualized inquires, rendering regular rate claims unsuitable as a basis for conditional certification. *See Def. Br.* at 23, Dkt. 43. The Ninth Circuit, however, has rejected such an argument. *See Senne*, 934 F.3d at 950. The court explained that while "damages will inevitably be individualized, to some extent," individual damage calculations are insufficient to "defeat collective treatment under the [FLSA] standard." *Id.*

(quoting *Campbell*, 903 F.3d at 1117). Here, the putative class shares a common material question of fact—does Cascadia's regular rate formula include all earned remuneration? If the answer to that question is no, then any potential collective member who has lost overtime wages because of the formula can individually calculate their damages. This is not an unusual or dispositive issue.

### C.    Limitations on Notice

As a final issue, Cascadia argues that even if certification is appropriate under any of the three policies, it should be limited only to employees with patient care responsibilities who work, or worked, at facilities located in Idaho. *See Def.'s Resp.* at 23, Dkt. 43. The court agrees that the collective class should be limited to patient-facing roles but does not agree that a geographic limitation is appropriate.

#### 1.  Patient-Facing Employees

Starting with Cascadia's request to limit notice to patient-care workers, the Court agrees that Greene has failed to show that non-patient-care workers are similarly situated.

Despite seeking an employee-wide collective, Greene's complaint is based on her experience as a patient-facing RN, and all the supporting declarations are

from employees with patient-care responsibilities.[5]

More importantly, the underlying basis for both the allegedly unlawful meal-break deduction policy and shift differentials appear to be intertwined with patient-facing responsibilities. Greene claims that "non-patient-facing workers have the same [meal-break deduction] conditions." *See Pl.'s Reply* at 8, Dkt. 44. In doing so, Greene does not cite the pleadings or any of the submitted declarations but quotes parts of her supporting memorandum. *See id.* (citing Dkt. 34-1 at 5). Her supporting memorandum cites to Gabrielle Messick's declaration for the broad proposition that non-patient-facing employees are similarly situated. *See Pl.'s Br.* at 5, Dkt. 34-1. Messick's declaration, however, does not do the heavy lifting Greene claims it does. Instead, Messick's explanation of why she was required to work through her scheduled lunch breaks is inextricably intertwined with her patient responsibilities. *See, e.g., Messick Dec.* ¶ 7, Dkt. 34-5 ("This is because, *as patient care workers*, we have an ongoing duty and responsibility to remain attentive and alert for the needs of our patients throughout our entire shift, even during unpaid meal periods.") (emphasis added); *id.* ("Cascadia also is notoriously

---

[5] Greene claims that one of the individuals who submitted a supporting declaration, Gabrielle Messick, did not have patient-facing responsibilities. However, as discussed below, the Court finds that Messick was, in fact, in a patient-facing role.

understaffed and, even though patient care workers try to cover each others' meal breaks when we can, there are simply too many patients and not enough workers to cover all of the breaks."); *id.* ¶ 8 (Cascadia's supervisors and managers know that hourly-paid *patient care workers* like me do not get fully relieved meal breaks[.]) (emphasis added); *id.* ("Cascadia's supervisors are also aware that we're understaffed because they set the staffing levels, know *the patient loads*, and can easily see there aren't enough *patient care staff* to cover all of the patients during attempted meal breaks.") (emphasis added).

Moreover, as discussed, Greene does not take issue with Cascadia's automatic meal deduction policy in and of itself. *See Def.'s Reply* at 2, Dkt. 44. Rather, she takes issue with how that automatic deduction policy conflicted with the circumstances that exist with patient-facing roles. Simply put, Greene has not met her burden of showing that all employees at Cascadia are similarly situated, just those hourly employees with patient-facing responsibilities.

Similarly, Greene has not shown that non-patient-facing Cascadia employees are similarly affected by Greene's allegations of failing to account for shift differentials and non-discretionary bonuses in overtime wages. Because Greene has not provided any affidavits from non-patient-facing employees, it is not clear whether those employees are entitled to shift differentials or non-discretionary

bonuses. *See Freeman Decl.* ¶ 2, Dkt. 34-3 (it does not appear that even all patient-facing employees were eligible for shift differentials). In fact, it is unclear that such employees work more than 40 hours a week. Accordingly, the Court will limit certification—and notice—to employees with patient-facing roles. *See Fengler*, 595 F. Supp. 2d at 191 (limiting the collective class only to "current and former hourly employees with direct patient care responsibilities[.]").

### 2. Geographic limitation

Moving to the request to limit notice to potential plaintiffs only in Idaho, after giving the issue significant thought, the Court finds that such a limitation would be unnecessarily restrictive. Cascadia argues that this Court and others "have repeatedly declined to certify a collective where plaintiffs could not demonstrate personal knowledge of practices at other [f]acilities." Def.'s Resp. at 23, Dkt. 43. Although Cascadia identifies relevant authority denying certification based on personal knowledge concerns, the Court finds the cases distinguishable.

Cascadia relies in large part on *Brown v. Citicorp Credit Services, Inc.*, 1:12-CV-00062-BLW, 2013 WL 4648546, at *2 (D. Idaho Aug. 29, 2013). *See Def.'s Resp.* at 23-24, Dkt. 43. In *Brown*, this Court was asked to certify a collective class of employees who worked at Citigroup's Idaho call center. *See* 2013 WL 4648546, at *2. In support of conditional certification, the plaintiff submitted two affidavits

from Citigroup employees who worked in a call center in North Carolina. Neither affiant had any knowledge or personal experience with the facility at issue. *See id*. at *3. Nor were not potential members of the proposed collective class. Because the North Carolinian employees had no knowledge of the practices at the specific call center at issue, this Court did not consider their declarations, leaving the plaintiff with only her declaration to support certification. *See id*.

Unlike the employees in *Brown*, the supporting declarations here spoke to each employee's individual experience at a facility covered by the requested collective action. While Cascadia is correct that these declarants don't have personal knowledge of facilities they did not work at, they do have knowledge of the facilities they did work at. Given the relevant knowledge of each declarant, it would be improper to disregard their testimony as the Court did in *Brown*. *See Brown*, 2013 WL 4648546, at *2. Further, despite Cascadia's claims that each facility is independently owned and operated, these declarations support Greene's assertion that there are common policies and practices throughout Cascadia medical facilities. Although not of significant importance, even Cascadia's own evidence shows that, at a minimum, there are commonalities between all Cascadia medical facilities. *See Hosac Dec.*, Ex. 1 (Exhibit 1 is a "recommended [meal deduction] policy" that was "used by most, if not all, of the Facilities[.]").

MEMORANDUM DECISION AND ORDER - 24

The other two cases Cascadia cites are similarly distinguishable from this matter. In *Fenn v. Hewlett-Packard Co.*, the plaintiff relied "almost exclusively on her own deposition testimony." No. 1:11-CV-00244-BLW, 2012 WL 1883530, at *2 (D. Idaho May 17, 2012). More importantly, this Court found that the plaintiff in *Fenn* "satisfied her minimal burden of showing there are similarly situated class members who would benefit from receiving notice of this action." *Id.* at *3. The plaintiff in *Young v. Cate* submitted 12 declarations in support of his request for certification. However, all the declarants in *Young* worked at the same facility. No. 2:11-CV-02491-KJM, 2013 WL 684450, at *2 (E.D. Cal. Feb. 22, 2013). Moreover, the plaintiff in *Young* had the benefit of pre-certification discovery, and the evidence he submitted demonstrated that there was no uniform policy that covered all the facilities. *Id.* at *5.

Unlike Cascadia's cited authority, Greene has provided supporting declarations from four employees—including herself—who have worked in six different Cascadia facilities. As Cascadia has acknowledged, the meal deduction policy is utilized at most, if not all, of its facilities. Even though Greene has not provided evidence from every Cascadia facility, that is not required at the conditional certification stage. *See, e.g., Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 537 (N.D. Cal. 2007) ("For conditional certification, plaintiffs do not

need to provide evidence that every facility relevant to the proposed class maintains an illegal policy."). Requiring a plaintiff to provide a declaration from every potential facility would defeat the purpose of conditional certification— which is strictly to provide potential plaintiffs notice of a potential lawsuit. *See Genesis Healthcare*, 569 U.S. at 75 ("The sole consequence of conditional certification is the sending of court-approved written notice to employees[.]"). Moreover, courts in this circuit often grant conditional certification to a broad collective, even where a plaintiff does not have evidence of the challenged policy or practice in every facility a defendant operates. *See, e.g., Fernandez v. Tox Corp.*, 677 F. Supp. 3d 1089, 1098 (C.D. Cal. 2023) (granting nationwide certification based on evidence of three potential opt-in collective members with the same or similar job requirements and pay provisions); *Haro v. Walmart, Inc.*, 2023 WL 2239333, at *7 (E.D. Cal. Feb. 27, 2023) (rejecting arguments to limit conditional certification to California employees).

Based on the pleadings and supporting declarations, and importantly, given the underlying remedial purpose of the FLSA, the Court finds that Greene has met the lenient burden to conditionally certify a nationwide collective class of patient-facing roles. Accordingly, the Court will limit notice to those employees with patient-facing roles, however, it will not restrict notice only to employees who

work in Idaho.

### D.    Proposed Notice

"A grant of preliminary certification results in the dissemination of a court-approved notice to the putative collective action members, advising them that they must affirmatively opt-in to participate in the litigation." *Campbell*, 903 F.3d at 1109. Here, Greene provided her proposed notice as an exhibit to her motion. Cascadia disputes both the form and manner of Greene's proposed notice.

Given the significance this decision has on the proposed notice and the dispute between the parties, rather than redraft the notice, the Court directs the parties to meet and confer within 21 days regarding the form and manner of the notice. *See Rosario v. 11343 Penrose Inc.*, No. 2:20-CV-04715-SB-RAO, 2020 WL 8812460, at *6 (C.D. Cal. Oct. 26, 2020) ("When parties disagree about the content and manner of notice, it is appropriate for them to meet and confer to try to reach agreement about proper notice."); *McNutt v. Swift Transportation Co. of Arizona, LLC*, No. C18-5668 BHS, 2020 WL 3819239, at *10 (W.D. Wash. July 7, 2020) (ordering parties to meet and confer regarding notice); *Bollinger v. Residential Cap., LLC*, 761 F. Supp. 2d 1114, 1121 (W.D. Wash. 2011) (same). If the parties are unable to agree on an acceptable notice or plan for distribution, either party may file an updated proposed notice, plan for distribution, and a brief

of up to five pages.

**ORDER**

**IT IS ORDERED that:**

1.      In accordance with this decision, Plaintiff's request for judicial authorization (Dkt. 34) is **GRANTED** in part.

2.      The parties are **DIRECTED** to meet and confer within 21 days regarding the form and manner of the notice.

DATED: October 15, 2024

B. Lynn Winmill
U.S. District Court Judge