UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KINDRA GREENE, individually and for others similarly situated,<br><br>   Plaintiff,<br><br>v.<br><br>CASCADIA HEALTHCARE, LLC,<br><br>   Defendant. | Case No. 1:23-cv-00253-AKB<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court is Plaintiff Kindra Greene's Motion to Approve Proposed Notice (Dkt. 72). Having reviewed the record and the parties' submissions, the Court finds that the facts and legal arguments are adequately presented, and that oral argument would not significantly aid its decision-making process, and it decides the motion on the parties' briefing. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B); *see also* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings."). For the reasons discussed below, the Court grants in part and denies in part the motion.

## I.    BACKGROUND

The Court set forth the factual background in detail in its prior MDO (Dkt. 50 at 1–4). The following background is relevant to the instant motion:

Plaintiff Kindra Greene filed this action on behalf of herself and other similarly situated employees, alleging that Defendant Cascadia Healthcare, LLC, violated the Fair Labor Standards Act (FLSA) by failing to properly compensate employees for overtime work (Dkt. 1 ¶¶ 9–12). Greene, a former registered nurse for Cascadia, seeks to represent other similarly situated employees who received improperly calculated overtime wages (Dkt. 34-1 at 4).

**MEMORANDUM DECISION AND ORDER – 1**

Greene moved to certify a putative collective group pursuant to 29 U.S.C. § 216(b) based on three different policies (Dkt. 34-1 at 4). On October 15, 2024, the Court granted Greene's motion in part and certified the putative collective group for all hourly, non-exempt employees who work for or on behalf of Cascadia at any Cascadia facility who (1) received an automatic meal period deduction, or (2) received shift differentials, on-call pay, or non-discretionary bonuses at any time from May 18, 2020, through the present (Dkt. 50). Because the parties disputed the form and manner of Greene's proposed notice, the Court directed the parties to meet and confer (*id.* at 27–28).

The parties met and conferred on multiple occasions but were unable to agree on an acceptable notice or plan for distribution (Dkt. 73 at 2). Accordingly, Greene has provided the Court with a proposed notice to be sent out to all potential plaintiffs in the class action as well as the consent form the potential plaintiffs will use to opt-in to the collective action (Dkt. 72; Dkt. 72-1). Cascadia opposes Greene's proposed notice and instead submits its own proposed notice for the Court's consideration (Dkt. 73; Dkt. 73-1).

## II.    LEGAL STANDARD

Under the FLSA, employees may sue employers for violations of the Act "for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). This is known as a collective action, and it proceeds somewhat differently than a Rule 23 class action because an employee who wishes to join an FLSA collective action must affirmatively opt in by filing a written consent. *See Hoffman–La Roche Inc. v. Sperling*, 493 U.S. 165, 171 (1989).

Once the Court has conditionally certified a putative collective group, notice of the FLSA action is given to potential plaintiffs. District courts have a substantial interest in the language of

the notice sent to potential plaintiffs as it reflects the neutrality of the court. *See id.* Thus, it is appropriate for the Court to be involved in the process of crafting the language of the notice. *Id.*

### III.    ANALYSIS

The parties disagree about the form and method of the Notice. The Court now resolves those disputes.

### A.    Content of Notice

The FLSA requires courts to provide potential plaintiffs "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffmann–La Roche*, 493 U.S. at 170. Thus, the Court must examine Plaintiff's proposed authorized notice of a collective action and ensure it is "timely, accurate, and informative." *Id.* at 172. Additionally, "[i]n exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality. To that end, trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action." *Id.* at 174.

Greene has provided a copy of her proposed notice along with the instant motion, as well as Cascadia's "redlined" version of her proposed notice (Dkt. 72; Dkt. 72-1; Dkt. 72-2). While the parties agreed on a majority of the language in the notice, several key issues remain in dispute (Dkt. 72 at 2).

First, the parties disagree on adding the words, "if any," to the heading "THE COURT HAS TAKEN NO POSITION IN THE CASE REGARDING THE MERITS OF PLAINTIFF GREENE'S CLAIMS OR DEFENDANT'S DEFENSES. THEREFORE, THIS NOTICE IS NOT AN EXPRESSION BY THE COURT OF ANY OPINIONS AS TO THE MERITS, *IF ANY*, OF THE LAWSUIT" (Dkt. 72-2 at 1) (emphasis added). Greene argues the phrase implies that the Court doubts the merit of the case (Dkt. 72 at 1–2). Cascadia contends that removing the term "if

**MEMORANDUM DECISION AND ORDER – 3**

any" implies that the Court has determined that Plaintiffs' claims have merit (Dkt. 73 at 6). The Court agrees with Cascadia. As Cascadia notes, the proposed language and formatting is identical to that previously proposed by this Court in *Hoffman v. Securitas Security Services*, No. CV07–502–EJL, 2008 WL 5054684, at *15 (D. Idaho Aug. 27, 2008) (Dkt. 73 at 6). The *Hoffman* Court found that this language sufficiently conveyed the Court's neutrality. *Id.* This Court likewise finds that the addition of "if any" conveys the neutrality of the Court and concludes the phrase should be included in the bolded statement of neutrality below the court caption.

Next, Cascadia proposes adding the following italicized language:

TO: All current and former hourly-paid, non-exempt employees with patient-facing responsibilities who worked for Cascadia Healthcare, LLC at any Cascadia facility who (i) received an automatic meal period deduction, and/or (ii) received shift differentials, on-call pay, and/or non-discretionary bonuses at any time from July 25, 2020, through the present. *While you are not employed by Cascadia Healthcare, LLC, Plaintiffs may amend the lawsuit to add your employer as a party.*

(Dkt. 73-1 at 2) (emphasis added). The only basis Cascadia provides, however, is the header, "Cascadia Healthcare, LLC Does Not Have Any Employees" (Dkt. 73 at 6). Greene objects, arguing that the proposed addition advances a merit-based argument and would unreasonably chill participation in this action (Dkt. 72 at 3–4). The Court agrees that this language should not be included. Greene correctly points out that the Court previously declined to resolve the issue of whether Cascadia was an employer, explaining that "courts should refrain from making merit-based determinations or resolving factual disputes" at this stage and that "it would be improper to determine Cascadia's employer status now" (Dkt. 50 at 8–10). The proposed language would suggest that the Court has already determined that potential opt-in plaintiffs were not employed by Cascadia, when the Court expressly declined to make that finding. It also risks confusing potential opt-in plaintiffs regarding whether they are eligible to participate in this action. The Court therefore declines to require inclusion of the proposed sentence.

**MEMORANDUM DECISION AND ORDER – 4**

Cascadia also proposes clarifying its position by stating: "Cascadia *vehemently* denies the allegations set forth in the Complaint and is actively defending against them" (Dkt. 73 at 5) (emphasis added). Greene argues the addition of the word "vehemently" to describe Cascadia's denial implies lack of merit (Dkt. 72 at 3), while Cascadia notes that "it is indisputable that Cascadia vehemently denies the allegations raised against it" (Dkt. 73 at 5). A statement that Cascadia denies violating the FLSA does not reflect the merits of the case; it is a fact that should be included in the notice to inform potential plaintiffs. *See Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 540 (N.D. Cal. 2007). The word "vehemently," however, is unnecessary, as Greene's proposed language accurately captures Cascadia's stance that it has not violated the law.

Cascadia next proposes the phrase "to the extent permissible by law" should be added to the disclosure on potential costs opt-in plaintiffs may incur (Dkt. 73 at 5). It argues that not including that language may "mislead potential collective members into believing that Plaintiffs' lawyers will cover all statutory costs *no matter what*" (*id.*). Greene disagrees, arguing that such language is duplicative, threatening, and "would have the sole effect of chilling potential plaintiffs' participation in this lawsuit" (Dkt. 72 at 4 n.3) (quoting *Williams v. U.S. Bank Nat'l Ass'n*, 290 F.R.D. 600, 613 (E.D. Cal. 2013)). Courts recognize that potential plaintiffs should be made aware of any fees or costs for which they may be liable before opting in to the lawsuit. *See, e.g.*, *Hanigan v. OpSec Sec., Inc.*, No. 22-CV-00064-DCN, 2022 WL 4465518, at *4 (D. Idaho Sept. 26, 2022); *Stanfield v. First NLC Fin. Servs., L.L.C.*, No. C 06-3892, 2006 WL 3190527, at *5 (N.D. Cal. Nov. 1, 2006). The Court agrees with Cascadia that the notice must include Cascadia's proposed language.

Finally, Cascadia argues that Greene should remove the language "and/or its affiliated entities" from the consent form because Cascadia is unaware of any other entities or affiliates that

**MEMORANDUM DECISION AND ORDER – 5**

are involved in this case (Dkt. 73 at 6). Greene maintains that the inclusion of this language is not to include some other unknown party, but rather to ensure that if any sort of technical misnomer occurs, the opt-in plaintiff can still proceed (Dkt. 72 at 4–5). The Court will allow Greene to keep the language in the notice because the caution is reasonable and does not appear to inconvenience Cascadia in any way.

In sum, Greene's proposed notice should be amended in the following ways: (1) the phrase "if any" shall be included in the notice's statement regarding the Court's neutrality; and (2) the phrase "to the extent permissible by law" shall be included in the disclosure regarding potential costs. Subject to these revisions, the Court finds that the proposed notice is accurate, neutral, and sufficient to inform potential opt-in plaintiffs of their rights under the FLSA.

## B.    Forms of Notice

Greene proposes that notice occur via mail, email, text message, and be posted at relevant Cascadia workplaces (Dkt. 72 at 5–6). Cascadia objects to sending text messages to putative class members and to posting notices in Cascadia workplaces (Dkt. 73 at 4, 6).

### 1.    Notice by Text

Greene argues the notice should be texted because "[t]ext messages are an efficient, if not the most efficient, method of notification and will ensure that notice is timely sent" (Dkt. 72 at 5) (quoting *Winningham v. Rafeal's Gourmet Diner, L.L.C.*, No. 22-CV-00382, 2022 WL 17752377, at *7 (D. Or. Dec. 19, 2022)). As a general rule, putative collective members are entitled to receive "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffmann-La Roche*, 493 U.S. at 170. Cascadia, however, raises significant concerns surrounding the privacy of potential plaintiffs (Dkt. 73 at 3).

In *Hanigan v. OpSec Security*, this Court explained that "the appropriateness of text message is linked to the potential plaintiffs at hand, such as blue-collar workers who might be

more likely to look at their text messages rather than their e-mails." 2022 WL 4465518, at *5. The Court noted that "Courts are less inclined to grant the use of text message when a plaintiff has failed to provide a specific reason that text message is necessary" because of the "concern over the invasiveness of text message communication." *Id.* at *6. Other courts in this circuit have likewise declined to require notice via text message for reasons such as the intrusive nature of unsolicited text messages and potential costs for individuals who receive a lengthy text message while holding a limited phone coverage plan. *See, e.g.*, *Hollis v. R & R Restaurants., Inc.*, No. 21-CV-00965, 2022 WL 1303263, at *5 (D. Or. May 2, 2022); *Chetwood v. T-Mobile USA, Inc.*, No. C19-0458, 2020 WL 1689730, at *4 (W.D. Wash. Apr. 7, 2020). Greene's response—that text message avoids the chilling effects of spam filters—does not undercut these concerns. Nor has Greene provided a sufficient reason as to why text message is needed beyond the other forms approved by this Court. Thus, the Court finds issuing notice via text message is unwarranted.

### 2. Posting of Notice in Workplace

Greene also proposes that the notice be posted at relevant worksites, arguing that such notice would effectuate notice to as many putative collective members as possible, without causing undue burden, delay, or prejudice (Dkt. 72 at 6). Cascadia disagrees, stating that posting in the workplace would be "duplicative, burdensome, and unnecessary," and "could cause confusion to employees who do not qualify as Putative Collective Members" (Dkt. 73 at 5).

While first class mail and email are ordinarily sufficient to notify class members who have been identified, courts have on occasion permitted other methods, such as publication or posting, to ensure that potential class members receive sufficient notice. *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1304 n.2 (9th Cir. 1990). Some courts have declined to require defendants to post notice in the workplace unless there is indication that other approved service methods will be ineffective or inadequate. *See, e.g.*, *Phelps v. MC Commc'ns, Inc.*, No. 2:11-CV-

00423, 2011 WL 3298414, at *6 (D. Nev. Aug. 1, 2011); *Litvinova v. City & Cnty. of San Francisco*, No. 18-CV-01494, 2019 WL 1975438, at *5 (N.D. Cal. Jan. 3, 2019). Other courts have permitted posting the notice in the workplace where it would enhance dissemination of the notice and impose minimal burden on the defendant. *See, e.g.*, *Adams*, 242 F.R.D. at 542; *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 493 (E.D. Cal. 2006).

Here, Greene has provided no explanation of how posting is likely to result in more effective notice to potential plaintiffs or that notice by first class mail and email will be ineffective or inadequate. Because notice by first class mail and email is reasonably calculated to reach potential opt-in plaintiffs, the Court declines to require workplace posting.

**IV.    ORDER**

**IT IS ORDERED that:**

1.    Plaintiff Kindra Greene's Motion to Approve Proposed Notice (Dkt. 72) is **GRANTED IN PART and DENIED IN PART**.

2.    In compliance with the directions above, Plaintiff must revise the Notice and the Consent Form within fourteen (14) days of this Order and submit the revised proposed Notice and Consent Form to the Court for approval.

DATED: May 12, 2026

Amanda K. Brailsford
U.S. District Court Judge

**MEMORANDUM DECISION AND ORDER – 8**